UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>SEBASTOPOL FORD, INC.,<br><br>        Defendant.<br>_____/ | No. C-07-1783 JSW (EMC)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

       Plaintiff Ford Motor Credit Company ("Ford Credit") has filed suit against Sebastopol Ford, Inc. for breach of contract, replevin, specific performance, and injunctive relief. For the foregoing reasons, the Court hereby recommends that Ford Credit's request for a TRO pursuant to California Code of Civil Procedure § 513.010 be **GRANTED**. The Court further recommends that the presiding judge immediately issue a TRO *de novo* or expedite consideration of this report and recommendation.

## I.    FACTUAL & PROCEDURAL BACKGROUND

       On March 29, 2007, Ford Credit filed this lawsuit against Sebastopol Ford, asserting claims for breach of contract, replevin, specific performance, and injunctive relief. On April 2, 2007, counsel for Ford Credit, David E. Pinch, spoke to the president of Sebastopol Ford, Greg Carter. *See* Pinch Decl. ¶ 2. Mr. Pinch informed Mr. Carter that the lawsuit had been filed and further told Mr. Carter that Ford Credit would be filing an *ex parte* application to seek a writ of possession and a temporary restraining order ("TRO"). *See id.* ¶ 3. Mr. Carter asked Mr. Pinch to e-mail the

complaint and moving papers, and Mr. Pinch did so. *See id.* ¶ 3 & Ex. A. Later that same day, Mr. Pinch had the *ex parte* application filed. *See id.* ¶ 3.

The next day, April 3, 2007, the presiding judge referred the matter to a magistrate judge for a report and recommendation. Judge White also directed Ford Credit to serve on Sebastopol Ford a copy of the referral order. *See* Docket No. 19. A proof of service filed by Ford Credit reflects that the referral order -- as well as Ford Credit's *ex parte* application -- was served on Sebastopol Ford on April 3, 2007. *See* Docket No. 20.

On April 9, 2007, the *ex parte* application was referred to the undersigned. On April 13, 2007, this Court denied the request for issuance of a writ of possession *ex parte* (because it is a drastic remedy appropriate only when less intrusive remedies, such as a TRO, would be ineffective) and set an expedited hearing date for Ford Credit's request for a TRO. *See* Docket No. 23. The Court also set an expedited hearing for Ford Credit's request for claim and delivery and instructed Ford Credit to file a copy of the proof of service for the summons and complaint. The proof of service filed by Ford Credit reflected that the summons and complaint were not formally served on Sebastopol Ford until April 13, 2007, that is, not until after the Court denied the *ex parte* application for a writ of possession. *See* Docket No. 26.

On April 16, 2007, Ford Credit filed a supplemental declaration (from Steve Boldvich) in support of its request for a TRO and claim and delivery. The supplemental declaration was served on Sebastopol Ford on April 16, 2007. *See* Docket No. 28.

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 64, "[a]t the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought." Fed. R. Civ. P. 64.

In the instant case, Ford Credit seeks the state provisional remedies of a TRO and a writ of possession. As noted above, the Court has set a hearing for the writ of possession (*i.e.*, claim and

2

1  delivery) for April 27, 2007. This order addresses only Ford Credit's request for a TRO pending the
2  claim and delivery hearing.

3  Under California Code of Civil Procedure § 513.010, at or after the time a plaintiff files an
4  application for a writ of possession, the plaintiff may apply for a TRO setting forth in the application
5  a statement of grounds justifying the issuance of a TRO. *See* Cal. Code Civ. Proc. § 513.010(a). A
6  TRO may issue *ex parte* if all of the following are found:

> (1) The plaintiff has established the probable validity of his claim to possession of the property.
>
> (2) The plaintiff has provided an undertaking as required by Section 515.010.
>
> (3) The plaintiff has established the probability that there is an immediate danger that the property claimed may become unavailable to levy by reason of being transferred, concealed, or removed or may become substantially impaired in value.

*Id.* § 513.010(b); *cf. Church of Christ in Hollywood v. Superior Court*, 99 Cal. App. 4th 1244, 1251 (2002) (noting that, in general, a court evaluates two interrelated factors in deciding whether to issue a TRO -- *i.e.*, "the likelihood that the plaintiff will prevail on the merits at trial" and "the interim harm that the plaintiff is likely to sustain if the [restraining order] were denied as compared to the harm that the defendant is likely to suffer if the [order] were issued") (internal quotation marks omitted).

The Court has reviewed the papers submitted by Ford Credit. No papers have been submitted by Sebastopol Ford. Sebastopol Ford has had ample opportunity to present a response to Ford Credit's request for provisional relief. Although Sebastopol Ford was not served with the summons and complaint until April 13, 2007, it was aware of the lawsuit, not to mention Ford Credit's intention to seek a writ of possession and injunctive relief, as of April 2, 2007. Based on the papers submitted by Ford Credit, the Court recommends that a TRO be issued pursuant to § 513.010(b).[1]

---

[1] As noted above, a court is entitled to issue a TRO *ex parte* if the requirements of § 513.010(b) are met. Here, the Court has given Sebastopol Ford both notice and an opportunity to respond.

3

First, Ford Credit has established the probable validity of its claim to possession of the property at issue.

In March 2006, Ford Credit and Sebastopol Ford entered into a Wholesale Financing and Security Agreement pursuant to which Ford Credit established and maintained for Sebastopol Ford a wholesale line of credit to finance new, used, and demonstrator motor vehicles. *See* Polley Decl., Ex. A (Wholesale Financing and Security Agreement). Under the Agreement, any advance made by Ford Credit to Sebastopol Ford with respect to an item of merchandise was to be paid, without demand, at or before the date on which the merchandise was sold, leased, or placed in use by Sebastopol Ford. *See id.* (Wholesale Financing and Security Agreement § 3). Upon demand, Sebastopol Ford had to pay all advances plus interest and flat charges. *See id.* (Wholesale Financing and Security Agreement § 3). As security for all advances, Sebastopol Ford granted to Ford Credit, *inter alia*, a security interest in the merchandise owned or thereafter acquired by Sebastopol Ford as well as in the proceeds of any sale or other disposition of such merchandise. *See id.* (Wholesale Financing and Security Agreement § 4). If Sebastopol Ford defaulted on its obligations under the Agreement, then Ford Credit could accelerate and declare immediately due and payable all advances made to Sebastopol Ford, together with interest and flat charges. *See id.* (Wholesale Financing and Security Agreement § 9). Ford Credit could also take "immediate possession of all property in which it has a security interest hereunder." *Id.* (Wholesale Financing and Security Agreement § 9).

Under a separate Security Agreement, dated June 2006, Sebastopol Ford also granted to Ford Credit a security interest in, *inter alia*, all equipment, fixtures, furniture, motor vehicles, and service parts and accessories. *See id.*, Ex. B (Security Agreement). If Sebastopol Ford failed to comply with any agreement it had with Ford Credit or defaulted on any amount or obligation due to Ford Credit, Ford Credit was entitled to the remedies of a secured party under the Uniform Commercial Code, "including . . . the right to take possession of the Collateral." *Id.* (Security Agreement).

In March 2007, Ford Credit conducted an audit of the inventory and accounts of Sebastopol Ford. *See id.* ¶ 10. Based on the audit, Ford Credit determined that Sebastopol Ford had defaulted on its obligations under the Wholesale Financing and Security Agreement because it had sold motor

vehicles but failed to repay Ford Credit. *See id.*; *see also id.*, Ex. A (Wholesale Financing and Security Agreement § 9).

Second, Ford Credit has established the probability that there is an immediate danger that the property claimed may become unavailable to levy by reason of being transferred, concealed, or removed or may become substantially impaired in value. The Court takes particular note of the Boldvich declaration, which indicates that, since the filing of the *ex parte* application for writ of possession, Sebastopol Ford has continued to sell cars without paying Ford Credit. *See* Boldvich Decl. ¶ 6.

Third, although Ford Credit claims that Sebastopol Ford has no interest in the property such that Ford Credit would not be required to make an undertaking, *see* Cal. Code Civ. Proc. § 515.010(b), Ford Credit is willing to file a bond in the full amount of the property's value. *See* App. at 13.

In sum, there is a substantial likelihood that Ford Credit will prevail on the merits and the balance of hardships tips in favor of Ford Credit in view of the undertaking it will post. Accordingly, a TRO pursuant to § 513.010(b) is proper.

The Court further recommends that the proposed TRO submitted by Ford Credit, as edited by the Court (see Exhibit A), be adopted. Consistent with § 513.020, because the property at issue is inventory, the TRO "may not prohibit the defendant from transferring the property in the ordinary course of business, but the order may impose appropriate restrictions on the disposition of the proceeds from such transfer." Cal. Code Civ. Proc. § 513.020(a). The proposed TRO as amended satisfies § 513.020(a).

///
///
///
///
///
///
///

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Ford Credit's request for a TRO pursuant to California Code of Civil Procedure § 513.010 be granted. The Court also recommends that the presiding judge immediately issue a TRO *de novo* or expedite consideration of this report and recommendation because of the continuing threat to Ford Credit's collateral.

Dated: April 19, 2007

EDWARD M. CHEN
United States Magistrate Judge

# EXHIBIT A

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SEBASTOPOL FORD, INC.,<br><br>　　　　Defendant.<br>_____/ | No. C-07-1783 JSW (EMC)<br><br>**[RECOMMENDED] ORDER GRANTING FORD MOTOR CREDIT COMPANY'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON APPLICATION FOR WRIT OF POSSESSION AND INJUNCTIVE RELIEF**<br><br>Submitted Ex Parte |

　　　　The Ex Parte Application of Ford Motor Credit Company, a Delaware corporation ("Ford Credit") for the issuance of a temporary restraining order came on by an ex parte application before the Honorable _____, United States District Court for the Northern District of California.

　　　　The Court, having reviewed the application of Ford Credit for a temporary restraining order, the supporting declarations and memorandum of points and authorities and the complaint on file in this action, and any opposition filed to the application, finds that Ford Credit has established that it is entitled to the issuance of a temporary restraining order and has established the probable validity that there is an immediate danger that the vehicles identified on the attached Exhibit "A," the other personal property described in the attached Exhibit "B" and the proceeds from the sale of any such vehicle or other personal property (collectively the "Collateral"), may become unavailable to levy and may become substantially impaired in value, and

GOOD CAUSE APPEARING, THEREFOR,

IT IS HEREBY ORDERED that:

1. Defendant, Sebastopol Ford, Inc., a California corporation, ("Sebastopol Ford") received timely and proper notice of this ex parte hearing on plaintiff Ford Credit's Application for Writ of Possession and Injunctive Relief under the Court's Local Rules.

2. Ford Credit has established the probable validity of its security interest in the vehicles identified on the attached Exhibit "A" and to all of Sebastopol Ford's parts, accessories, furniture, fixtures, machinery, supplies and other equipment, contract rights, chattel paper and general intangibles, and that defendant Sebastopol Ford is in default on its loan obligations owing to Ford Credit as set forth in the moving papers. The Vehicles and other personal property are collectively referred to as the "Collateral" below.

3. Ford Credit has established that the Collateral is located at 6791 Sebastopol Avenue, Sebastopol, California 95472 (the "Dealership").

4. Sebastopol Ford may sell or lease the Collateral in the ordinary course of business only as provided in this Order:

   a. At the time of any retail sale or lease of any Vehicle, Sebastopol Ford shall immediately notify Ford Credit of such sale or lease via email to the following email address: jpolley@ford.com and by promptly delivering or faxing to Ford Credit a true copy of the written contract of such retail sale or lease.

   b. Sebastopol Ford shall turn over possession to Ford Credit and Ford Credit shall maintain physical custody of titles for all vehicles in which Ford Credit has a lien or security interest, whether or not financed by Ford Credit. In doing so, Ford Credit shall not interfere with transfers in the ordinary course of business.

   c. Within the earlier of five business days from retail sale or lease of a Vehicle identified on the attached Exhibit "A," or one business day from Sebastopol Ford's receipt of any of the sale proceeds for any retail sale or lease of a Vehicle, including any Vehicle identified on Exhibit "A" that has been sold or

leased on or before the date of this Order for which defendant Sebastopol Ford received proceeds before or after the date of this Order, Sebastopol Ford shall immediately and forthwith remit to Ford Credit by electronic funds transfer all amounts received by Sebastopol Ford up to the amount advanced by Ford Credit to Sebastopol Ford to acquire the vehicle (the "Advanced Price").  Any proceeds in excess of the Advanced Price on a particular vehicle may be retained by Sebastopol Ford to use towards its operating expenses. Ford Credit's security interest continues to attach to the proceeds in excess of the Advanced Price to the extent they are not used to cover operating expenses;

d. Within the earlier of five business days from sale or lease of a vehicle not identified on the attached Exhibit "A" (the "Non-Floored Vehicles"), or one business day from Sebastopol Ford's receipt of any of the "cash" proceeds of such sale or lease of a Non-Floored Vehicle, Sebastopol Ford shall immediately and forthwith remit to Ford Credit by electronic funds transfer or other immediately  available funds received by Sebastopol Ford in the amount of 75% of Sebastopol Ford net sale price of the Non-Floored Vehicle after payment of taxes, registration, and licensing.

e. Should Sebastopol Ford receive any vehicle as a "trade-in" for the payment of a Vehicle or a Non-Floored Vehicle, Sebastopol Ford shall notify Ford Credit within one business day of receiving the trade-in by email to the following email address: jpolley@ford.com.  Furthermore, Sebastopol Ford shall promptly pay or satisfy any liens or amounts owing against the trade-in Vehicle.  Sebastopol Ford may subsequently sell the trade-in as a Non-Floored Vehicle in accordance with subparagraphs a, b, c and d above;

f. Trades or transfers of Vehicles by Sebastopol Ford with other dealers ("Dealer Trades") are prohibited without the written consent of Ford Credit which shall not be unreasonably delayed or denied.  Requests for Dealer

        Trades shall be made via email to the following email address: jpolley@ford.com;

    g.    Sebastopol Ford shall limit the use of Demonstrators to customer test drives.

    h.    Sebastopol Ford may sell parts, accessories, or related supplies ("Parts") in the ordinary course of its service department's business only as follows: Sebastopol Ford shall use the proceeds from the cost of the Parts sold to either (1) buy replacement Parts, or (2) pay Sebastopol Ford's invoice cost on account of part's sales, in the form of cashier's checks or other immediately available funds to Ford Credit. While Sebastopol Ford continues to use parts, it must replenish the parts inventory to adequately protect and maintain Ford Credit's collateral position. Sebastopol Ford shall submit to Ford Credit a written accounting upon its request of the following:

        (a)    Parts sold the previous week;

        (b)    Parts ordered as replacements the previous week; and,

        (c)    Payment for any parts not replaced the previous week.

5.    Except as provided herein, Sebastopol Ford is restrained from removing any of the unsold Collateral in such manner as to make it less available to seizure by levying officer and/or impairing the value of the subject Collateral.

6.    Sebastopol Ford shall permit Ford Credit and its authorized agents and employees to enter upon Sebastopol Ford's Dealership sales lot at 6791 Sebastopol Avenue, Sebastopol, California 95472 during business operating hours. A Ford Credit representative on the premises during the hours of operation shall be authorized to hold possession of keys to all vehicles, to be present while all mail and other package deliveries are opened and to review the cash receipts journals on a daily basis without unreasonable delay. Ford Credit is authorized to conduct audits and inspections of the Collateral and Sebastopol Ford's books and records. Sebastopol Ford shall deliver copies of all bank statements to Ford Credit within one hour of receipt by Sebastopol Ford of such statements each day.

1. 7. The value of Sebastopol Ford's assets is approximately $1,624,156.67 which is less than the principal amounts of the contractual obligations totaling $2,094,157.67 it owes to Ford Credit by $470,001.00. Ford Credit shall provide an undertaking in the amount of $1.2 million. The findings in this paragraph 7, in particular, and the finding in this order, generally, are subject to review and reconsideration at the time of the hearing set for the writ of possession and injunctive relief.

8. In the event that Sebastopol Ford violates any term or terms of this Temporary Restraining Order, Ford Credit may file an application to enforce the Temporary Restraining Order on two days notice. The Court may review such application prior to the date of the hearing on the writ of possession and injunctive relief and the Court may enter an order to enforce the terms of this Temporary Restraining Order as reasonably necessary, including, but not limited to, issuing an immediate order for writ of possession or turn-over of funds or imposition of sanctions.

9. This order shall issue _____ __, 2007, at ____ _.m.

10. This Order shall remain in effect until modified by further order of this Court, or modified by written agreement signed by plaintiff Ford Credit and defendants Sebastopol Ford filed with and approved by order of this Court.

Dated: April ___, 2007

                                               JEFFREY S. WHITE
                                               United States District Judge

**United States District Court**
For the Northern District of California