UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR CREDIT COMPANY, | No. C-07-1783 JSW (EMC) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION RE PLAINTIFF'S APPLICATION FOR WRIT OF POSSESSION** |
| SEBASTOPOL FORD, INC., | |
| Defendant. | |
| _____/ | |

Plaintiff Ford Motor Credit Company ("Ford Credit") has filed suit against Sebastopol Ford, Inc. for breach of contract, replevin, specific performance, and injunctive relief. For the foregoing reasons, the Court hereby recommends that Ford Credit's application for a writ of possession be **GRANTED**.

### I. FACTUAL & PROCEDURAL BACKGROUND

On March 29, 2007, Ford Credit filed this lawsuit against Sebastopol Ford, asserting claims for breach of contract, replevin, specific performance, and injunctive relief. On April 2, 2007, counsel for Ford Credit, David E. Pinch, spoke to the president of Sebastopol Ford, Greg Carter. *See* Pinch Decl. ¶ 2. Mr. Pinch informed Mr. Carter that the lawsuit had been filed and further told Mr. Carter that Ford Credit would be filing an *ex parte* application to seek a writ of possession and a temporary restraining order ("TRO"). *See id.* ¶ 3. Mr. Carter asked Mr. Pinch to e-mail the complaint and moving papers, and Mr. Pinch did so. *See id.* ¶ 3 & Ex. A. Later that same day, Mr. Pinch had the *ex parte* application filed. *See id.* ¶ 3.

The next day, April 3, 2007, the presiding judge referred the matter to a magistrate judge for a report and recommendation. Judge White also directed Ford Credit to serve on Sebastopol Ford a

copy of the referral order. *See* Docket No. 19.  A proof of service filed by Ford Credit reflects that the referral order -- as well as Ford Credit's *ex parte* application -- was served on Sebastopol Ford on April 3, 2007. *See* Docket No. 20.

On April 9, 2007, the *ex parte* application was referred to the undersigned. On April 13, 2007, this Court denied the request for issuance of a writ of possession *ex parte* (because it is a drastic remedy appropriate only when less intrusive remedies, such as a TRO, would be ineffective) and set an expedited hearing date for Ford Credit's request for a TRO. *See* Docket No. 23. The Court also set an expedited hearing for Ford Credit's request for claim and delivery and instructed Ford Credit to file a copy of the proof of service for the summons and complaint. The proof of service filed by Ford Credit reflected that the summons and complaint were formally served on Sebastopol Ford on April 13, 2007. *See* Docket No. 26.

On April 16, 2007, Ford Credit filed a supplemental declaration (from Steve Boldvich) in support of its request for a TRO and claim and delivery. The supplemental declaration was served on Sebastopol Ford on April 16, 2007. *See* Docket No. 28.

On April 18, 2007, the Court held a hearing on Ford Credit's request for a TRO. Sebastopol Ford did not appear at the hearing nor did it submit any papers in opposition to the request for a TRO. The Court subsequently recommended that a TRO be issued, *see* Docket No. 29, and, on April 19, 2007, the presiding judge in the case issued a TRO de novo. *See* Docket No. 30. On April 27, 2007, this Court held the hearing on Ford Credit's application for a writ of possession.

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 64, "[a]t the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought." Fed. R. Civ. P. 64.

In the instant case, Ford Credit seeks the state provisional remedy of a writ of possession.[1]
Under California Code of Civil Procedure § 512.010,

> (a)  Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this chapter for a writ of possession by filing a written application for the writ with the court in which the action is brought.
>
> (b)  The application shall be executed under oath and shall include all of the following:
>
>> (1)  A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed.  If the basis of the plaintiff's claim is a written instrument, a copy of the instrument shall be attached.
>>
>> (2)  A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and, according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.
>>
>> (3)  A particular description of the property and a statement of its value.
>>
>> (4)  A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.
>>
>> (5)  A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.
>
> (c)  The requirements of subdivision (b) may be satisfied by one or more affidavits filed with the application.

Cal. Code Civ. Proc. § 512.010.

Section 512.060 provides that a writ of possession shall issue if (1) the plaintiff has established the probable validity of the plaintiff's claim to possession of the property and (2) the undertaking requirements of § 515.010 are satisfied.  *See id.* § 512.060(a).  The statute further provides: "No writ directing the levying officer to enter a private place to take possession of any

---

[1] As noted above, a TRO has already been issued to protect Ford Credit in the meantime.

property shall be issued unless the plaintiff has established that there is probable cause to believe that the property is located there." *Id.* § 512.060(b).

The Court has reviewed the papers submitted by Ford Credit. No papers have been submitted by Sebastopol Ford. Sebastopol Ford has had ample opportunity to present a response to Ford Credit's request for provisional relief. Although Sebastopol Ford was not served with the summons and complaint until April 13, 2007, it was aware of the lawsuit, not to mention Ford Credit's intention to seek a writ of possession and injunctive relief, as of April 2, 2007. Based on the papers submitted by Ford Credit, the Court recommends that a writ of possession be issued in accordance with §§ 512.010 and 512.060.

Ford Credit has established the probable validity of its claim to possession of the property at issue. *See* Cal. Code Civ. Proc. § 511.090 ("A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim."). In March 2006, Ford Credit and Sebastopol Ford entered into a Wholesale Financing and Security Agreement pursuant to which Ford Credit established and maintained for Sebastopol Ford a wholesale line of credit to finance new, used, and demonstrator motor vehicles. *See* Polley Decl., Ex. A (Wholesale Financing and Security Agreement). Under the Agreement, any advance made by Ford Credit to Sebastopol Ford with respect to an item of merchandise was to be paid, without demand, at or before the date on which the merchandise was sold, leased, or placed in use by Sebastopol Ford. *See id.* (Wholesale Financing and Security Agreement § 3). Upon demand, Sebastopol Ford had to pay all advances plus interest and flat charges. *See id.* (Wholesale Financing and Security Agreement § 3). As security for all advances, Sebastopol Ford granted to Ford Credit, *inter alia*, a security interest in the merchandise owned or thereafter acquired by Sebastopol Ford as well as in the proceeds of any sale or other disposition of such merchandise. *See id.* (Wholesale Financing and Security Agreement § 4). If Sebastopol Ford defaulted on its obligations under the Agreement, then Ford Credit could accelerate and declare immediately due and payable all advances made to Sebastopol Ford, together with interest and flat charges. *See id.* (Wholesale Financing and Security Agreement § 9). Ford Credit could also take "immediate possession of all property in which it has a security interest hereunder." *Id.* (Wholesale Financing and Security Agreement § 9).

4

Under a separate Security Agreement, dated June 2006, Sebastopol Ford also granted to Ford Credit a security interest in, *inter alia*, all equipment, fixtures, furniture, motor vehicles, and service parts and accessories. *See id.*, Ex. B (Security Agreement). If Sebastopol Ford failed to comply with any agreement it had with Ford Credit or defaulted on any amount or obligation due to Ford Credit, Ford Credit was entitled to the remedies of a secured party under the Uniform Commercial Code, "including . . . the right to take possession of the Collateral." *Id.* (Security Agreement).

In March 2007, Ford Credit conducted an audit of the inventory and accounts of Sebastopol Ford. *See id.* ¶ 10. Based on the audit, Ford Credit determined that Sebastopol Ford had defaulted on its obligations under the Wholesale Financing and Security Agreement because it had sold motor vehicles but failed to repay Ford Credit. *See id.*; *see also id.*, Ex. A (Wholesale Financing and Security Agreement § 9). It appears that, since the filing of the *ex parte* application for writ of possession, Sebastopol Ford has continued to sell cars without paying Ford Credit. *See* Boldvich Decl. ¶ 6. Ford Credit has presented evidence that the total principal loan balance that Sebastopol Ford owes under the Wholesale Agreement exceeds the value of the property at issue. *See* Polley Decl. ¶¶ 13, 20.

Finally, there is probable cause to believe that the property is located at Sebastopol Ford's dealership (*i.e.*, at 6791 Sebastopol Ave., Sebastopol, California 95742), *see* Polley Decl. ¶¶ 10, 19, and there is no evidence that the property has been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure. *See id.* ¶ 23.

As for the terms of the writ of possession, § 512.080 provides that the writ shall meet all of the following requirements:

> (a) Be directed to the levying officer within whose jurisdiction the property is located.
>
> (b) Describe the specific property to be seized.
>
> (c) Specify any private place that may be entered to take possession of the property or some part of it.
>
> (d) Direct the levying officer to levy on the property pursuant to Section 514.010 if found and to retain it in custody until released or sold pursuant to Section 514.030.

5

      (e)      Inform the defendant of the right to object to the plaintiff's undertaking, a copy of which shall be attached to the writ, or to obtain redelivery of the property by filing an undertaking as prescribed by Section 515.020.

Cal. Code Civ. Proc. § 512.080. Under § 512.070, "[i]f a writ of possession is issued, the court may also issue an order directing the defendant to transfer possession of the property to the plaintiff. Such order shall contain a notice to the defendant that failure to turn over possession of such property to plaintiff may subject the defendant to being held in contempt of court." *Id.* § 512.070. The 1973 law revision commission comment to § 512.070 notes that an order "is not issued in lieu of a writ but rather in addition to or in aid of a writ, permitting the plaintiff to select a more informal and less expensive means of securing possession." *Id.*, 1973 law revision commission comment; *see also* Rutter Group, Cal. Prac. Guide: Enforcing Judgments & Debts § 4:790 ("If defendant delivers the property to plaintiff pursuant to the turnover order, plaintiff will avoid the time and expense of having the levying officer seize the property.").

      The Court finds that no undertaking is required under Calif. Code of Civil Procedure § 515.010(a) and (b). As noted above, the market value of the property to be seized is less than the amount due and owing under the Security Agreement. Defendant's inventory has been substantially diminished without payment made to Ford Credit. Sebastopol Ford has no net "interest in the property" under § 515.010(a), and thus no undertaking is required under § 515.010(b).

      The Court recommends that the proposed writ of possession submitted by Ford Credit, as edited by the Court to conform with the statutes cited above (see Attachment A [note that proposed writ has Exhibits A and B]), be adopted.

///
///
///
///
///
///
///

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Ford Credit's request for a writ of possession be granted.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: May 7, 2007

EDWARD M. CHEN
United States Magistrate Judge